# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

TIMOTHY TOWNSEND, Jr., :
    Plaintiff, :
     :
v. : No. 3:17-cv-900 (SRU)
     :
CORRECTION OFFICER MUCKLE, et al., :
    Defendants. :

## REVIEW OF AMENDED COMPLAINT (Doc. No. 10)

On May 31, 2017, Timothy Townsend, Jr. ("Townsend"), currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed a pro se civil rights complaint against thirty-eight employees of the Connecticut Department of Correction ("DOC"). The complaint spanned seventy-one, single-spaced, type-written pages and consisted of six different sets of federal and state law claims for incidents that occurred at three different correctional facilities, which were unrelated to each other. *See* Initial Review Order, Doc. No. 9 at 5. As a result, I (1) dismissed the complaint with leave to amend because it did not comply with Rules 8 or 20 of the Federal Rules of Civil Procedure and (2) instructed Townsend to file an amended complaint in this case addressing only one of the six sets of claims articulated in the initial complaint. *Id.* at 8.

On December 12, 2017, Townsend filed an amended complaint against nine DOC employees in their individual capacities: Correction Officer S. Wales, Correction Officer Joshua Lorenzen, Correction Officer Steven Nemeth, Lieutenant Santiago Rangel, Correction Officer John Doe 1, Correction Officer John Doe 2, Lieutenant Congelos, Captain Dougherty, and District Administrator Angel Quiros. Am. Compl., Doc. No. 10. The amended complaint alleges violations of the United States Constitution, Connecticut Constitution, and Connecticut

common law for events that occurred while Townsend was incarcerated at Corrigan-Radgowski Correctional Institution ("Corrigan") in Uncasville, Connecticut. *Id.* Townsend seeks monetary and declaratory relief from all nine defendants and injunctive relief against defendants Congelos and Quiros. I conclude that Townsend's amended complaint has cured the deficiencies of the initial complaint and complies with Rules 8 and 20. For the following reasons, however, the amended complaint will be dismissed in part.

I. **Standard of Review**

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II. Factual Allegations

Townsend alleges the following facts. On January 21, 2015, at about 11:00 a.m., Correction Officer Wales ordered Townsend to exit his cell in the B-Dorm at Corrigan and enter the main hallway. Wales was upset because Townsend had been talking during "count time." Townsend exited his cell as ordered, but when he entered the main hallway, Wales began to "verbally disrespect" him. Townsend told Wales that he was not allowed to talk to him in that manner. Then, without warning, Wales shoved Townsend, causing him to stumble backwards and into the door. The force of the door caused Townsend to suffer back and neck pain for several weeks. Officers John Doe 1 and John Doe 2 witnessed the assault but never reported the incident. In his report on the incident, Wales wrote that "no force or technique" was used.

Immediately after the assault, Townsend "beg[ged] [Wales] for mercy" and assured him that he would not tell anyone what he had done. Wales called Townsend a "punk," and, together with Doe 1 and Doe 2, escorted him to the "A/P room bullpen." Once secured in the bullpen, Lieutenant Rangel approached Townsend with some other correction officers and asked him, "What you wanna do?" Townsend told Rangel that he did not want any problems and that he would not say anything about the assault. Rangel responded that Townsend was "smart" and then exited the A/P room. He returned a short time later and informed Townsend that he would be receiving a disciplinary ticket for "flagrant disobedience" because he had been talking during count time and that he would be transported to the restrictive housing unit ("RHU") in Corrigan. Rangel never reported the incident involving Wales or ordered Wales, Doe 1, or Doe 2 to report the incident.

Correctional staff escorted Townsend to the RHU building and, per protocol, brought him to the medical unit for a routine evaluation. During the medical evaluation, Townsend did not report the assault that caused his injuries out of fear of retaliation because, at the time, he was accompanied by a lieutenant and several correction officers.

The next day, Townsend submitted a request to medical for further evaluation. He intentionally wrote a vague request so that he would not attract "any negative attention." Medical staff issued him pain medication, but he continued to endure extreme pain in his neck and back for several weeks.

On January 31, 2015, ten days after the assault, Townsend called one his relatives, Rameek Gordon, and told him that he had been assaulted by a correction officer. He asked Gordon to contact the state police so that he could pursue criminal charges and told him that he would call him back after he finished showering. When Townsend called Gordon a second time, Gordon told him that he had spoken with the state police, who informed him that they would come interview Townsend and record a statement.

After his second phone call with Gordon, Correction Lieutenant Palmer called Townsend to his office and asked him if he had asked a family member to contact the state police about being assaulted by correction staff. Townsend told Palmer that he would explain everything to the state police when they came to interview him and then returned to his housing unit.

When he reentered his housing unit, Townsend called Gordon a third time and requested that he contact the state police again and ask them when they were coming to Corrigan. Shortly thereafter, around 9:00 p.m., Townsend was called back to Palmer's office and placed in the RHU pending an investigation into the assault.

4

Sometime thereafter, the state police contacted Corrigan staff requesting video footage of the incident on January 21. Captain Dougherty told State Trooper Rogers via e-mail that "there isn't a video," but he wrote in an incident report that there was video footage which did not show any inmate assault. Townsend filed a grievance based on Dougherty's refusal to provide video footage of the assault. He received a response from the deputy warden that the video footage was being preserved. Townsend later learned from Trooper Rogers that no criminal charges would be filed because of the lack of evidence or reported injuries.

On February 1, at about 1:15 p.m., Correction Officer Lorenzen issued Townsend a Class A disciplinary ticket for threatening correctional staff over the telephone on January 27, 2015 while he was speaking with a family member. Lorenzen claimed that the following statements, made by Townsend, constituted threats:

(1) "Yo, I'm going back to the box. I'm going to jump the counter and going back to the box."
(2) "If you don't hear it, that means I went back to the box. I done acted nasty."
(3) "They gonna beat my black ass cuz I'm gonna act nasty."

Compl. ¶ 38. Townsend denies that he intended these statements as threats and believes Lorenzen issued him the ticket because he had contacted the state police about the assault by Wales on January 21.

Townsend was provided with a counselor to serve as his advocate for the disciplinary proceeding, but Correction Officer Nemeth refused to provide his counselor with the entire transcript of the telephone call on January 27. Nemeth stated that the disciplinary ticket contains sufficient detail of the conversation and the threats made therein. Townsend's counselor quoted DOC Administrative Directive 9.5, section 31E, which states that "[a] copy or listing of any

5

physical evidence shall be given or made available to the inmate or the inmate's advocate by the investigator at least 24 hours prior to the hearing," but Nemeth still refused to provide the full transcript of the phone call.

Townsend's disciplinary hearing was held on February 5, 2015. Lieutenant Congelos acted as the hearing officer. During the hearing, Congelos refused to permit Townsend's advocate to read the entire transcript of the phone conversation. Congelos stated, "[I]f Officer Lorenzen says it's a threat, then it's a threat. . . . I don't need any other evidence except Officer Lorenzen's word." Thereafter, Congelos found Townsend guilty of threatening correctional staff. As punishment, Townsend was placed in punitive segregation for fifteen days and lost thirty days of commissary, thirty days of phone privileges, and ten days of good time credit.

Townsend immediately appealed the guilty finding to District Administrator Quiros and raised what he interpreted to be several due process violations that occurred during the disciplinary proceeding. However, Quiros never investigated the alleged violations. He issued Townsend a written response stating that "no serious due process failure occurred."

### III. Analysis

Townsend claims that Wales violated his Eighth Amendment right to protection against cruel and unusual punishment by assaulting him on January 21 and that Rangel, Doe 1, Doe 2, and Dougherty violated his Eighth Amendment right to protection by acting with deliberate indifference to his safety. He claims that Lorenzen violated his First Amendment right to free speech by issuing him a false disciplinary report in retaliation for contacting the state police about the assault. Townsend is suing Nemeth, Congelos, and Quiros for violating his Fourteenth Amendment right to procedural due process by denying him a fair disciplinary proceeding

regarding the threat charges made against him. He is pursuing state tort law claims of assault and battery against Wales and state constitutional claims against Rangel, Doe 1, Doe 2, Dougherty, Lorenzen, Nemeth, Congelos, and Quiros based on the same factual allegations supporting his federal constitutional claims. Although Townsend's claims are grounded in two different sets of factual allegations, the assault on January 21 and the disciplinary proceeding for the alleged threats, they are sufficiently related that, in the interests of justice and judicial economy, I will review all of them under section 1915A.

A. <u>Eighth Amendment Excessive Force</u>

Townsend first claims that Wales violated his Eighth Amendment right to be free from cruel and unusual punishment by assaulting him without warning on January 21, 2015. "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). To establish a claim of excessive force under the Eighth Amendment, Townsend must satisfy both subjective and objective standards. *See Sims v. Artuz*, 230 F.3d 14, 20-21 (2d Cir. 2000). The subjective component requires a showing that the official's use of physical force was "malicious[] and sadistic[] rather than part of a good faith effort to maintain or restore discipline". *Wilkins*, 559 U.S. at 40 (quoting *Hudson*, 503 U.S. at 9). The objective component . . . focuses on the harm done in light of contemporary standards of decency, but the amount of harm that must be shown depends on the nature of the claim. *Sims*, 230 F.3d at 21; *Banks v. Cty. of Westchester*, 168 F. Supp. 3d 682, 688 (S.D.N.Y. 2016). Although some degree of injury ordinarily will be required, *Banks*, 168 F. Supp. 3d at 688, Townsend does not have to show that he sustained a significant injury in order

7

to prevail on an excessive force claim, *Sims*, 230 F.3d at 22; *Wilkins*, 559 U.S. at 37. He sufficiently states an Eighth Amendment claim if he "alleges facts from which it could be inferred that [Wales] subjected him to excessive force, and did so maliciously and sadistically . . . ." *Sims*, 230 F.3d at 22.

In this case, Townsend has alleged sufficient facts to support a claim of excessive force against Wales. He alleges that Wales ordered him to exit his cell and then, without warning, shoved him into the cell door, causing him injury. He also alleges that Wales was "verbally disrespecting" him, which supports an inference of malicious intent. Based on those allegations, I will permit Townsend's excessive force claim to proceed against Wales.

      B.      <u>Eighth Amendment Deliberate Indifference to Safety</u>

Townsend next claims that Rangel, Doe 1, and Doe 2 acted with deliberate indifference to his safety, in violation of the Eighth Amendment, by failing to intervene during and/or report the assault by Wales on January 21, 2015. He claims that Dougherty acted with deliberate indifference to his safety by failing to investigate the assault and refusing to turn over to the state police the video footage showing the assault.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates". *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To state a claim for deliberate indifference to safety, in violation of the Eighth Amendment, Townsend must show that the alleged conduct was sufficiently serious and that the defendants acted with a sufficiently culpable state of mind, that is, that they acted maliciously and sadistically to cause harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The defendants must have been aware that Townsend faced an excessive risk to his health and safety and ignored that risk. *See id.* at

837. To determine whether Townsend faced an excessive risk of serious harm, the courts "look at the facts and circumstances of which the [defendants] w[ere] aware at the time [they] acted or failed to act". *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks and citation omitted). Moreover, to obtain an award for damages against the defendants, Townsend must show that they were personally liable for the alleged constitutional violation. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010).

In this case, Townsend alleges that Doe 1 and Doe 2 stood by and witnessed Wales assault him, that Rangel approached him shortly thereafter and made intimidating and/or threatening remarks to him, and that, even later in time, Dougherty failed to investigate the assault. Construed liberally, those allegations plausibly state a claim for deliberate indifference against Doe 1 and Doe 2. *See Medina v. Punter*, 2017 WL 5629530, at *2 (D. Conn. Nov. 22, 2017) (plaintiff stated plausible claim for deliberate indifference to safety against officer who stood by for three minutes while other inmates assaulted plaintiff before calling for help). However, although Rangel's threatening comments might show malice on Rangel's part, they cannot show that Rangel failed to act to prevent an objectively serious risk of harm—Rangel was not present for the assault itself, and Townsend has not pleaded facts capable of showing that Rangel was aware of the assault or had any obligation to become aware of the assault before Townsend was secure in the bullpen. *See Green v. Leubner*, 2009 WL 3064749, at *7 (N.D.N.Y. Sept. 22, 2009) (dismissing a deliberate indifference claim against officers where the officers "were not present at the time of the verbal confrontation, and there is no suggestion of any prior history between the plaintiff and [his assailant] that might have led to cause for concern"); *Stewart v. Schiro*, 2015 WL 1854198, at *8 (E.D.N.Y. Apr. 22, 2015). Similarly, Townsend's

9

claim that Dougherty failed to investigate the assault or produce video footage for the state police is insufficient to state a claim for deliberate indifference. *See Johnson v. Schiff*, 2013 WL 5466218, at \*16 (N.D.N.Y. Sep. 13, 2013) (dismissing deliberate indifference claim against official based on failure to respond to prisoner's complaint of physical abuse by correctional staff). Therefore, I will permit Townsend's deliberate indifference claims to proceed only against Doe 1 and Doe 2. The claims against Rangel and Dougherty are dismissed.

C. Retaliation Claims

Townsend claims that Lorenzen retaliated against him by issuing him a false disciplinary report for threatening correctional staff after he had his relative contact the state police about the assault that took place on January 21, in violation of his rights of free speech under the First Amendment to the United States Constitution, and article first, section 5 of the Connecticut Constitution. I conclude that, at this early stage, Townsend's retaliation claims should be allowed to proceed.

To state a First Amendment retaliation claim, Townsend must show "(1) that the speech or conduct at issue was protected, (2) that [Lorenzen] took adverse action against [him], and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotations omitted). Townsend bears the burden of showing that the protected conduct was a substantial or motivating factor in Lorenzen's disciplinary decision. *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014).

Townsend alleges that he engaged in protected conduct by initiating a call to the state police about the assault and that Lorenzen took adverse action thereafter by filing a disciplinary report for threatening correctional staff. Although Townsend does not expressly allege a causal

10

connection between the two events, "[p]roof of a causal connection . . . may be demonstrated . . . by showing that the protected activity was followed closely in time by adverse treatment." *Fasoli v. City of Stamford*, 64 F. Supp. 3d 285, 297 (D. Conn. 2014). Townsend alleges that his disciplinary ticket was issued less than twenty-four hours after calling Gordon and asking him to report the assault on Townsend to the state police.

The right to be free from retaliation under the free speech provisions of the Connecticut Constitution is even broader than the right under the United States Constitution. *Trusz v. UBS Realty Inv'rs, LLC*, 319 Conn. 175, 192 (2015). Accordingly, I conclude that Townsend has sufficiently stated retaliation claims against Lorenzen to survive section 1915A review.

### D. Fourteenth Amendment Procedural Due Process

Townsend claims that Nemeth and Congelos violated his right to due process under the Fourteenth Amendment by denying him access to the full transcript of his phone conversation, on which the disciplinary charge for threatening correctional staff was based. He claims that Quiros violated his due process right by failing to conduct an investigation into the disciplinary report and subsequent proceedings, and failing to reverse Congelos's guilty finding. As a result of the proceeding, Townsend was placed in punitive segregation for fifteen days and lost thirty days of commissary, thirty days of phone privileges, and ten days of good time credit.

The Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause protects both rights to substantive due process and a right to procedural due process. In this case, Townsend is raising only a claim of procedural due

11

process based on his allegations that Nemeth, Congelos, and Quiros denied him a fair disciplinary hearing.

To state a procedural due process claim, Townsend must allege that he was deprived of a protected liberty or property interest and that the procedures followed by Nemeth, Congelos, and Quiros were constitutionally insufficient. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam). In the prison context, a claimant's burden is higher because his liberty interests have already been severely restricted. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). Thus, to prevail on a procedural due process claim, Townsend must show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* In *Sandin*, the Supreme Court concluded that a prisoner who was subject to thirty days of confinement in restrictive housing did not sustain a deprivation of a liberty interest protected under the Due Process Clause. *Id.* at 486.

"To comport with procedural due process, an inmate charged with a violation in a disciplinary hearing must be given: '(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.'" *Williams v. Menifee*, 331 Fed. App'x 59, 60 (2d Cir. 2009) (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985)). "[W]ith respect to the revocation of good conduct credits, due process requires that 'the findings of the prison disciplinary board [b]e supported by some evidence in the record.'" *Id.* at 60-61 (citing *Hill*, 472 U.S. at 454).

With respect to Townsend's claims regarding his placement in punitive segregation for fifteen days, his loss of thirty days of commissary, and his loss of thirty days of phone privileges, I conclude that Townsend has not sufficiently alleged an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" under *Sandin*. Similar sanctions have been deemed insufficient to state a claim for violations of due process. *See Frazier v. Coughlin*, 81 F.3d 313, 317-18 (2d Cir. 1996) (thirty days loss of recreation, loss of commissary privileges and telephone use did not state cognizable claim for denial of due process); *McLellan v. Chapdelaine*, 2017 WL 388804, at *4 (D. Conn. Jan. 27, 2017) (loss of commissary and visitation privileges for sixty days did not implicate due process); *Griffin v. Cleaver*, 2005 WL 1200532, at *5-6 (D. Conn. May 18, 2005) (prisoner's confinement in segregation for thirty days and ninety days loss of telephone privileges not "atypical or significant hardship" under *Sandin*).

With respect to Townsend's claim of loss of good time credits, the Second Circuit has clearly established that prisoners have a liberty interest in earned credits. *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000). However, Townsend's claim that he was deprived of good time credits pursuant to a procedurally deficient disciplinary hearing is barred under the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), which bars due process claims challenging a disciplinary hearing to the extent the alleged procedural defects imply the invalidity of the credit deprivation. *Douglas v. Yarbrough*, 24 F. App'x 61, 63 (2d Cir. 2001) (citing *Edwards v. Balisok*, 520 U.S. 641, 646-48 (2001)). Therefore, I dismiss Townsend's due process claims against Nemeth, Congelos, and Quiros.

E. State Law Due Process Claims

In addition to his federal due process claims, Townsend alleges three state law due process claims alleging failures to provide Townsend with a fair disciplinary proceeding: (1) against Nemeth and Congelos for failing to provide Townsend or his advocate with a copy of the telephone transcript; (2) against Congelos for his failure to call a witness requested by Townsend, and for finding Townsend guilty; and (3) against Quiros for upholding Congelos' decision without an investigation. Am. Compl., Doc. No. 10 at ¶ 66-68.

In order to prevail on a procedural due process claim under the Connecticut Constitution, Townsend must show that: (1) he has a cognizable property interest; (2) he was deprived of his property interests; and (3) the deprivation occurred without due process of law. *Dutch Point Credit Union, Inc. v. Caron Auto Works, Inc.*, 39 Conn. App. 123, 130 (1994). The Connecticut Supreme Court "has repeatedly held that, as a general rule, the due process clauses of both the United States and Connecticut constitutions have the same meaning and impose similar limitations." *Id*. at 129 n.6 (internal quotation marks omitted).

In a disciplinary hearing, a prisoner has "no right to due process [at his disciplinary hearing] unless a liberty interest has been deprived." *Coleman v. Commissioner of Correction*, 111 Conn. App. 138, 141 (2008) (quoting *Scott v. Albury*, 156 F.3d 283, 287 (2d Cir. 1998)). "To constitute a deprivation of liberty, a restraint must have imposed an 'atypical and significant hardship … in relation to the ordinary incidents of prison life.'" *Id*. (quoting *Sandin*, 515 U.S. at 484). Further, the prisoner "must establish that 'the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint.'" *Id*. at 142 (quoting *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)).

Here, Townsend alleges that Nemeth and Congelos failed to provide Townsend or his advocate with a copy of the telephone transcript at issue in his hearing, in violation of Administrative Directive 9.5 Section 31E. Am. Compl., Doc. No. 10 at ¶ 10. Under Connecticut due process jurisprudence, "a prisoner can be deprived of [good time] credit only if offered procedural due process protection." *Mitchell v. Commissioner of Correction*, 94 Conn. App. 210, 217 (2006). Accordingly, if the failure to provide evidence was indeed a violation of the regulations governing disciplinary hearings, Townsend's loss of good time credits may have been a violation of his due process rights. Accordingly, I will allow Townsend's state law allegation to proceed against Nemeth and Congelos for failure to comply with the cited Administrative Directive.

Townsend does not allege, however, that the state has passed any regulation or statute protecting him from the other alleged deprivations that occurred at his hearing, and, therefore, Townsend has not established that his due process rights were violated with respect to those allegations. Accordingly, Townsend's argument that Nemeth and Congelos violated his state due process rights may proceed only with respect to the allegation that they violated Administrative Directive 9.5 Section 31E.

F. State Law Assault and Battery Claim

In addition to his excessive force claim, Townsend is suing Wales for assault and battery under Connecticut law. I can exercise supplemental jurisdiction over such state law claims if:

> (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact.

*Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds by Graham v. Connor*, 490 U.S. 386 (1989). "A civil assault is defined as 'the intentional causing of imminent apprehension of harmful or offensive contact with another'." *Germano v. Dzurenda*, 2011 WL 1214435, at *22 (D. Conn. Mar. 28, 2011) (quoting *Dewitt v. John Hancock Mutual Life Ins. Co.*, 5 Conn. App. 590, 594 (1985)). "[A]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Id.* (quoting *Alteiri v. Colasso*, 168 Conn. 329, 334 n. 3 (1975)) (internal quotation marks omitted).

As discussed above, Townsend has stated a plausible Eighth Amendment claim for excessive force against Wales. That claim arises out of the same set of facts as Townsend's assault and battery claims. Therefore, I will exercise supplemental jurisdiction over Townsend's assault and battery claims and permit them to proceed against Wales.

G. <u>Spoliation of Evidence</u>

Townsend claims that Wales, Rangel, Doe 1, Doe 2, and Dougherty committed spoliation of evidence. "Intentional spoliation of evidence is defined as the intentional destruction, mutilation, or significant alteration of potential evidence for the purpose of defeating another person's recovery in a civil action." *Rizzuto v. Davidson Ladders, Inc.*, 280 Conn. 225, 243 (2006). To prevail on a claim of spoliation, Townsend would be required to show that (1) the defendants knew of a pending or impending civil action in which he was involved, (2) the defendants destroyed evidence, (3) the defendants acted in bad faith, that is, with intent to

deprive him of his civil action, (4) he was unable to establish a prima facie case without the destroyed evidence, and (5) damages. *Id.* at 244.

Although not alleged very clearly, Townsend claims that Dougherty committed spoliation of evidence by "failing to turn over video evidence to the Connecticut State Police." Am. Compl., Doc. No. 10 at ¶ 64. Townsend alleges that Dougherty stated in an incident report that there was video footage of the alleged assault against Townsend but, when asked for it by the Connecticut State Police, said that there was no video. Here, it is reasonable to assume that because Townsend called the Police regarding the incident, he would also initiate a civil action for the alleged assault, as he had already complained to prison staff about it. Townsend alleges that Dougherty admitted to having video footage, but then said there was none. Townsend's pleadings allege that Dougherty either destroyed the video or lied about its existence to the Police. Further, Townsend alleges that charges, albeit criminal, were "not filed against [Wales] due to lack of evidence (conclusive video footage)." *Id*. at ¶ 52. The allegation, then, is sufficient to raise an inference that without the video evidence, Townsend would have a difficult time establishing a prima facie case against Wales for the alleged assault. Accordingly, I will permit Townsend's spoliation claim against Dougherty regarding the video footage to proceed.

Townsend also claims that Wales, Rangel, Doe 1, and Doe 2, and committed spoliation by failing to report or investigate the assault on January 21. *Id*. at ¶ 63. This allegation, however, is insufficient to state a claim for spoliation as Townsend makes no allegation that any of those defendants destroyed evidence. Therefore, I dismiss Townsend's spoliation claim against Wales, Rangel, Doe 1, and Doe 2.

**IV. Conclusion**

(1) Townsend's claims against Rangel and Quiros are dismissed. His Eighth Amendment claims for excessive force and deliberate indifference to safety may proceed against Wales, Doe 1, and Doe 2. The state law claims for assault and battery may proceed against Wales. His federal and state constitutional claims for retaliation against Lorenzen may proceed. His state law due process claim against Nemeth and Congelos may proceed. His spoliation claim against Dougherty may proceed. All other claims are dismissed.

(2) The Clerk shall verify the current work address for Wales, Lorenzen, Nemeth, Congelos and Dougherty with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint (Doc. No. 10) to those defendants at the confirmed addresses within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the **thirty-fifth (35) day** after mailing. If Wales, Lorenzen, Nemeth, Congelos, or Dougherty fail to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the party so failing, and such party shall be required to pay the costs of service in accordance with Fed. R. Civ. P. 4(d).

(3) Because Townsend has not identified John Doe 1 or John Doe 2 by name, the Clerk is not able to serve a copy of the amended complaint on those defendants in their individual capacities. Within **ninety (90) days** of the date of this order, Townsend shall file a notice indicating the first and last name of the Doe defendants. If Townsend files the notice, I will direct the Clerk to effect service of the amended complaint on those defendants in their

individual capacities. If Townsend fails to identify Doe 1 or Doe 2 within the time specified, the claims against them will be dismissed.

(4) Wales, Lorenzen, Nemeth, Congelos, Dougherty and the Doe defendants (if properly identified) shall file their response to the amended complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

It is so ordered.

Dated at Bridgeport, Connecticut this 5th day of November 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge